UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTOINE NELSON,

        Petitioner,

v.                                                        Case No. 07-C-1022

PETER A. HUIBREGTSE,

        Respondent.

**DECISION AND ORDER DENYING WRIT OF HABEAS CORPUS**

      Antoine Nelson, an inmate at the Wisconsin Secure Program Facility, filed a petition for a writ of habeas corpus with this Court pursuant to 28 U.S.C. § 2254, in which he claims his conviction and sentence were imposed in violation of the Constitution. Nelson was convicted as a party to the crime of first degree-intentional homicide while using a dangerous weapon and attempted first-degree intentional homicide in Milwaukee County Circuit Court on October 18, 1999. He was sentenced to life imprisonment on the homicide with a parole eligibility date of 2060 and a consecutive thirty-five years on the attempted homicide.

      Following the Court's screening under Rule 4 of the Rules Governing § 2254 Cases, the sole claims remaining in Nelson's petition are claims of ineffective assistance on the part of Nelson's trial counsel in failing to object to improper closing argument by the prosecutor, and that of his postconviction and appellate counsel in failing to raise the issue in his first postconviction motion and on appeal. For the reasons that follow, I conclude that Nelson's claims are utterly without merit. His petition will therefore be denied. Before reaching the merits of Nelson's claims,

however, I must first traverse the complex and almost impenetrable thicket of procedural limitations that have been erected to guard against federal intrusion on state court prerogatives in criminal proceedings. But first, the facts.

**I. BACKGROUND**

**A. Events Through Trial**

Nelson and three other men were charged with firing automatic weapons in the direction of a barbeque less than a half-hour after someone at the barbeque had shot at and wounded one of their friends. Several people at the barbeque suffered nonfatal bullet wounds. A pregnant woman in a nearby house was struck in the neck by a stray bullet, however, and died. Police discovered her body when her young son came outside and told them his mother was bleeding. The evidence supporting the convictions was succinctly summarized in Nelson's attorney's no-merit report filed in lieu of a brief on appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967), and Wis. Stat. § 809.32, and the decision of the Wisconsin Court of Appeals accepting the report and affirming the conviction. (Doc. # 12, Answer to Pet., Ex. B and C.)

Nelson was implicated in the shooting by Tacoby Davis, the friend who was shot first. Davis told police that he was shot while riding in the back passenger seat of a van driven by Patrick Rogers. Cornelius Green was seated in the front passenger seat and William Ward was sitting behind the driver. As they were driving past the barbeque at 1934 N. 38th Street, a member of a rival gang fired a weapon at the van, striking Davis in the leg. They then drove to Nelson's girlfriend's house and told Nelson what had happened. Davis told police that he and Green went into the house, and that Nelson, Ward and Rogers left. About a half-hour later someone from the barbeque called Green about the shooting. Later that evening Davis saw on the news that a woman

2

had been killed, and the following day he asked Nelson about it. Davis told police that Nelson responded, "We burnt them."

In his statement to police, Green confirmed that after Davis had been shot, Nelson, William Ward and Rogers left the residence and twenty-five minutes later he received a call telling him about the shooting. Later that evening, Green said he went to Nelson's house where Rogers told him that Nelson, Rogers and Ward were driven over to the barbeque by Nelson's uncle. Rogers told Green that they had crept through some yards with AK-47 rifles and had begun "busting caps." Rogers also told Green that they had "wet those niggers," meaning that they had shot at people. Green told police that he saw Ricky Newell holding a black bag in the rear of Nelson's house that same evening. Green stated that when he had previously seen the bag it had an AK-47 in it.

Ricky Newell told police that he was at Nelson's house apparently after the shooting and that Nelson appeared "hyped and sweaty." Nelson told Newell that he needed to drop off a duffle bag somewhere, and then placed a heavy-looking duffle bag in Newell's truck and took it to another house. Newell also told police that Nelson told him Davis had been shot and that Nelson had gone with Ward and Rogers "to take care of business."

Police found seventy-five 7.62 mm shell casings at the scene of the second shooting where the woman was killed. 7.62 mm rounds are used in AK-47 or SKS rifles. The shells found at the scene were determined to have come from three different SKS-type rifles. Two days after the shooting, police executed a search warrant on Nelson's home and seized from the basement a Norinco SKS 7.62 mm rifle and a thirty-round magazine. Although none of the casings found at the scene matched the rifle found in Nelson's basement and other people had access to the home,

3

the evidence was admitted at Nelson's trial on the theory that it showed that Nelson had access to the type of weapon and ammunition involved in the shooting.

Both Davis and Green testified inconsistently with their statements to the police at trial and attempted to shift responsibility to Newell. Their prior inconsistent statements were used to impeach them, however, and under Wisconsin law could be treated as substantive evidence. *See* Wis. Stat. § 908.01(4)(a); *Vogel v. State*, 96 Wis. 2d 372, 384, 291 N.W.2d 838, 844 (1980). Nelson offered as his defense an alibi. He claimed he was at a birthday party that evening and watched television with his girlfriend when he returned. He denied seeing Davis, Green, Newell, Rogers or Ward at all that evening, and left the following morning for Appleton, and then Chicago. His alibi was supported by his sister, a cousin and his girlfriend. The jury obviously rejected Davis and Green's trial testimony and Nelson's alibi, and found him guilty of both counts.

**B. Motion for New Trial**

After sentencing, Nelson filed a motion for a new trial on the ground that Green had been induced to lie at his trial by a $5,000 payment by Ricky Newell and the promise of probation by the prosecutor. At an evidentiary hearing, however, the prosecutor denied he had promised Green probation or anything improper in return for cooperation and Green's attorney confirmed that Green had made the statements implicating Nelson in the shootings without any promise of probation from the prosecutor. Tacoby Davis also testified that, contrary to his trial testimony, Newell had never paid him money to testify against Nelson and that Nelson had indeed said "we burnt them" in reference to the shootings as he had first told the police. Davis said he lied during trial in order to help his friends. Davis' attorney had since worked out an agreement with the prosecution under

4

which Davis had agreed to testify against Ward and Rogers. As a result, both Ward and Rogers were pleading guilty.

William Ward also testified at the hearing on Nelson's motion for a new trial pursuant to a plea agreement with the state. Ward testified that after Nelson learned that Davis had been shot on May 26, 1999, he retrieved several AK-47's from a closet and gave them to Ward and Rogers. Ward then confirmed that Nelson's uncle had then driven them over to the 1900 block of N. 38th Street and that he, Nelson and Rogers went through yards and fired in the direction of the barbeque. Ward admitted that Newell had nothing to do with it and that after the shootings he was told by Green that Nelson had threatened him and told him to implicate Newell.

Finally, Andre Welch, who was housed in the same pod as Nelson, testified that he overheard Nelson threaten to kill Green and tell him to say that he was paid to say that Nelson was the killer. Welch also testified that Nelson had written out a plan and had Welch pass it on to Ward and Rogers.

Not surprisingly, in light of the evidence presented, the trial judge found that the evidence offered by Nelson in support of his motion was neither newly discovered, nor credible, and denied his motion for a new trial.

**C. State Appeal and Collateral Review**

Rather than file a brief in support of his appeal from his conviction and the denial of his postconviction motion, Nelson's appellate counsel filed a no-merit report pursuant to *Anders v. California*, 386 U.S. 738 (1967). The four issues presented by Nelson's appellate counsel in the report were (1) the sufficiency of the evidence to convict; (2) the trial court's denial of Nelson's

motion *in limine* to exclude evidence of a rifle found in his home; (3) the denial by the trial court of a motion for a new trial based upon newly-discovered evidence; and (4) alleged erroneous exercise of sentencing discretion. Nelson was provided a copy of the no-merit report and advised of his right to respond. (Answer Ex. B at 2-3.) Nelson wrote to the Wisconsin Court of Appeals and expressed a lack of knowledge in the law and that he did not understand how to respond.

The appellate court affirmed the judgment of conviction and post-conviction order on August 22, 2003. (Answer Ex. C.) The appellate court indicated agreement with Nelson's counsel that the four issues raised lacked arguable merit. The court also independently reviewed the record for any other possible issues, and concluded:

> Upon our independent review of the record, we have found no other arguable basis for reversing the judgment of conviction. We conclude that any further appellate proceedings would be wholly frivolous within the meaning of *Anders* and WIS STAT. RULE 809.32.

(Answer Ex. C. at 5.) The Wisconsin Supreme Court denied Nelson's petition for review on November 24, 2003, after Nelson failed to submit reasons in support of his petition for review as required by Wis. Stat. § (Rule) 809.62(2). (Answer Ex. E.)

Nelson filed a petition for state habeas corpus relief on February 23, 2005, challenging for the first time the effectiveness of his appointed appellate counsel on direct appeal. His claim was that appellate counsel was ineffective for not challenging trial counsel's ineffectiveness. Of the grounds Nelson advanced in his state petition, two appear in his federal petition: (1) trial counsel was ineffective for failing to challenge the jury instructions on party-to-a-crime liability; and (2) trial counsel was ineffective for failing to object to the prosecutor's closing argument to the jury.

6

(Answer Ex. G at Pt. B.) In support of his claim of improper argument, Nelson asserts that the prosecutor improperly stated his personal view of the evidence and witnesses. For example, Nelson alleged that the prosecutor repeatedly made statements prefaced with "I believe, I think, I thought, I don't believe, I don't think." He stated that he believed the evidence against the defendant was credible and that the defense witnesses or theory were incredible. He also stated to the jury "[t]he presumption of innocence essentially for Mr. Nelson, in my opinion, has been erased." (Answer, Ex. G., Part B.)

Nelson's state habeas petition was denied *ex parte* by the Wisconsin Court of Appeals on May 25, 2005. (Answer Ex. H.) The appellate court indicated that the appropriate forum for Nelson to challenge the effectiveness of trial counsel was in the trial court. Nelson filed a petition for review in the Wisconsin Supreme Court, but filed a notice of voluntary dismissal before the Court acted upon the petition. The Wisconsin Supreme Court ordered the petition dismissed on July 28, 2005. (Answer Ex. J.)

In the meantime, on July 25, 2007, Nelson filed a motion for collateral postconviction relief under Wis. Stat. § 974.06 in the trial court, advancing the same ineffective assistance of trial counsel challenge. This postconviction motion was denied by the trial court on August 8, 2005. (Answer Ex. K.) The trial court reasoned that Nelson was procedurally barred from seeking the relief requested, as Nelson failed to advance the claims of ineffective assistance in response to the no-merit report and failed to offer "sufficient reason" to explain that default. *See* Wis. Stat. § 974.06(4); *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (Wis. 1994). Nelson then appealed this decision to the Wisconsin Court of Appeals, and included a claim that his

7

appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffective assistance of counsel. (Answer Ex. L.) The Court of Appeals affirmed the trial court's order in a *per curiam* order on July 31, 2007. (Answer Ex. O.) Nelson filed a petition for review with the Wisconsin Supreme Court, which was denied on November 5, 2007. (Answer Ex. P.)

**D. Federal Habeas Procedural History**

Nelson filed his federal habeas corpus petition with this Court on November 6, 2007. In his petition Nelson claimed his ignorance of the law resulted in his failure to raise the issue of ineffective assistance of counsel in response to the no-merit report and that this should not have been regarded as a procedural bar by the Wisconsin courts during his subsequent post-conviction motion. He also claims his right to effective assistance of counsel was violated when post-conviction and appellate counsel rendered ineffective assistance by failing to pursue a claim of ineffective assistance of trial counsel, and when trial counsel failed to object to certain jury instructions and parts of the prosecutor's closing argument.

In my Order of January 10, 2008, I screened Nelson's petition pursuant to Rule 4 of the Rules Governing § 2254 Cases. (Doc. # 5.) I concluded that the procedural bar applied by the Wisconsin Court of Appeals to Nelson's ineffective assistance challenges was not an adequate and independent ground for denying habeas review on the merits of his ineffective assistance challenges. In reaching this conclusion, I relied on *Page v. Frank*, a case with procedural facts similar to this case. 343 F.3d 901 (7th Cir. 2003). I allowed Nelson to proceed with a claim of ineffective assistance of trial counsel for failing to object to alleged improper argument by the prosecutor at trial. He was also permitted to advance a claim of ineffective assistance of postconviction and

8

appellate counsel for failing to raise the issue of ineffective assistance of trial counsel in his direct appeal.[1]

**II. ANALYSIS**

**A. Independent and Adequate State Law Ground**

Respondent makes a strong argument that Nelson is not entitled to federal review of his claims of ineffective assistance of counsel because he failed to properly assert them in state court. As a result, respondent argues, his claims were denied by the Wisconsin courts on an adequate and independent state ground that is not subject to federal review. Under these circumstances, respondent contends it would be improper for this court to reach the merits of Nelson's petition. Instead, the court should simply deny Nelson's petition summarily.

The basis of respondent's argument is the "independent and adequate state ground doctrine" which holds that federal habeas review is barred when a state court has declined to address a prisoner's federal claims because the prisoner has failed to meet a state procedural requirement. *Moore v. Bryant*, 295 F.3d 771 (7th Cir. 2002). The application of the independent and adequate

---

[1] I addressed the issue of whether the claim of ineffective assistance of postconviction and appellate counsel was proper given 28 U.S.C. § 2254(i) in my prior order:

> 28 U.S.C. 2254(i) provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral postconviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." Thus, there is generally no constitutional right to effective postconviction counsel. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). Here, however, the challenge asserted is that postconviction counsel failed to preserve the issue of ineffective assistance of trial counsel for direct appeal. Thus, it does not regard counsel's performance during a collateral proceeding, and is not precluded by 28 U.S.C. 2254(i).

(Doc. # 5 at 7 n.2.)

state ground doctrine in habeas cases is grounded in concerns of comity and federalism. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). The rule insures that state prisoners are not able to circumvent state procedural rules and the deference that 28 U.S.C. § 2254 mandates for state court decisions addressing constitutional claims through procedural defaults that prevent state court review. *Id.* at 731-32. If state prisoners could obtain § 2254 review of claims on which they procedurally defaulted in state court, then not only would they be able to circumvent state procedural requirements, but they would also rob state courts of their opportunity to correct constitutional violations without federal involvement. Requiring that state prisoners follow state procedure also prevents them from avoiding state court determinations of the merits of their claims over which federal review is highly deferential.

The difficulty in applying the doctrine, however, is in deciding when a default in state court constitutes an adequate and independent state ground. Whether the ground is independent depends on state law, and whether it is adequate depends on federal law. *Liegakos v. Cooke*, 106 F.3d 1381, 1385 (7th Cir. 1997). Here, the respondent argues that Nelson's failure to identify his ineffective assistance of counsel claim in response to his attorney's *Anders* no-merit report before the Wisconsin Court of Appeals resulted in a waiver of that claim for purposes of further review. Thus, when he later attempted to assert it in his § 974.06 motion, the Wisconsin courts held that it was procedurally barred under *State v. Escalona-Naranjo*. Respondent contends that this ruling precludes review by this court under § 2254.

As I attempted to explain in my initial screening order, however, the Seventh Circuit apparently disagrees. In *Page v. Frank*, a case with procedural facts almost identical to this case, the Seventh Circuit held that "[t]he practical effect of the Court of Appeals of Wisconsin's

10

conclusion—that the failure to identify ineffective assistance of trial counsel as an issue in response to an *Anders* no-merit brief constitutes a waiver—is to require [the petitioner] to have asserted a claim before the court of appeals that, under established Wisconsin case law, he could not bring initially in that forum because it had not been brought to the attention of the trial court." 343 F.3d 901, 909 (7th Cir. 2003). Such a conclusion, the court determined, does not apply Wisconsin procedure in a "consistent and principled way," and, therefore, does not adequately support the state court's decision. *Id.* at 905-06; *see also Johnson v. Turner*, 2007 WL 1724948, *3 (E.D. Wis. 2007). Based on the Seventh Circuit's decision in *Page*, I conclude that Nelson's failure to raise the issue of ineffective assistance of counsel in response to the no-merit report does not preclude federal habeas corpus review of that claim. I therefore proceed to consideration of that claim.

**B. Standard of Review**

Federal review of claims brought by state prisoners under § 2254 is, as noted above, highly deferential to state court adjudications of federal claims. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214, provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This case is concerned only with subsection (d)(1).

11

A state court decision is "contrary to" established Supreme Court precedent when the court applies a rule different from governing Supreme Court cases or confronts a set of facts that is materially indistinguishable from those of a Supreme Court decision and arrives at a different conclusion. *Williams v. Taylor*, 529 U.S. 362 (2000). If the case involves an "unreasonable application" of Supreme Court precedent, this Court must defer to reasonable state court decisions and cannot grant the writ unless the state court's decision was objectively unreasonable. *Bell v. Cone*, 535 U.S. 685, 694 (2002).

This standard of review does not apply, however, where the state court does not reach the merits of the prisoner's claim. In my initial screening order, I stated that because the Wisconsin courts did not address Nelson's ineffective assistance of counsel claims on the merits, the deferential AEDPA standard of review would not apply. Instead, I concluded that I would be required to utilize the general standard set forth in 28 U.S.C. § 2243, to "dispose of the matter as law and justice require." Upon further consideration, however, I now conclude that the more deferential standard may indeed be appropriate. This is because even though the Wisconsin Court of Appeals did not single out Nelson's ineffective assistance claim when it accepted his attorney's no merit report and summarily affirmed his conviction, the court did in fact rule on it to the extent that it concluded from its review of the entire record that there were no nonfrivolous claims that could be asserted. In essence, the Wisconsin court concluded that such a claim would be frivolous. Since this constitutes a ruling on the merits, I conclude the deferential standard applies. In truth, however, the issue is entirely academic. Regardless of which standard of review is applied, Nelson's claims fail.

12

**C. Ineffective Assistance of Counsel**

Although Nelson has two claims of ineffectiveness which I will review, one is derivative of the other. He complains that his trial counsel was ineffective for failing to object to alleged improper argument of the prosecutor. Nelson's second claim is that his postconviction and appellate counsel was ineffective for failing to preserve the issue of trial counsel's purported ineffectiveness when he did not raise the issue in the *Anders* no-merit brief on Nelson's direct appeal. The relief Nelson requests of this Court is that the state appellate court consider his claims on the merits, or that this Court address the claims on the merits, reverse his conviction and order a new trial. Because Nelson's claims of ineffective assistance of counsel are without merit, no such relief will issue and his petition is denied.

In order to show ineffective assistance of counsel petitioner must show that counsel's representation was deficient, *i.e.*, that it fell below an objective standard of reasonableness, and that he was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The performance standard gives a wide latitude of permissible attorney conduct, and a petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotation marks deleted); *see also Washington v. Smith*, 219 F.3d 620, 627 (7th Cir. 2000). If the prisoner has identified specific omissions, the court must determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Once the prisoner establishes his counsel's ineffectiveness, he must still demonstrate prejudice. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A court need not

13

determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Id*. at 697. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice that course should be followed. *Id*.

As I discussed in my earlier order in this case, there is such a thing as improper argument by prosecutors.

> It is improper for a prosecutor to express his personal opinion about a defendant's guilt. *U.S. v. Young*, 470 U.S. 1 (1985). However, in evaluating prosecutorial misconduct, it is not enough that a prosecutor's remarks were "undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citations and quotation marks omitted).

(Doc. # 5 at 6.) The Seventh Circuit has noted that *Darden*

> sets forth several factors to inform this inquiry: "(1) whether the prosecutor misstated the evidence, (2) whether the remarks implicate specific rights of the accused, (3) whether the defense invited the response, (4) the trial court's instructions, (5) the weight of the evidence against the defendant, and (6) the defendant's opportunity to rebut."

*Hough v. Anderson*, 272 F.3d 878, 903 (7th Cir. 2001) (quoting *Howard v. Gramley*, 225 F.3d 784, 793 (7th Cir. 2000)). If the argument made by the prosecutor is not so egregious as to rise to the level of a constitutional violation as contemplated in *Darden*, a failure on the part of defense counsel to object to the argument "cannot be considered prejudicial for purposes of the *Strickland* analysis." *Hough*, 272 F.3d at 904.

Nelson claims there are six specific instances of argument which were improper. The first challenge he presents are these comments of the prosecutor: "But Mr. Nelson is in this all the way. I don't think there is any question there." (Pet. at 9.)

14

Nelson's second claim of improper argument is the following:

> Mr. Nelson, I think, had his story ready. T [sic] think it includes his checking time on the cable box the T.V in his room. And then he said no, he hadn't actually looked at the clock. That's what he said. And I think even Mr. Nelson from one day to the next realized it wasn't sounding too good.

(Pet. at 9-A.)

The third challenge Nelson provides is this argument of the prosecutor: "I think it's clear from the law that even if–even if mentally you are thinking I'm going to scare them I'm going to light this place up, I'm going to show them not to shoot at my guys." (*Id.*)

Nelson's fourth claim of improper argument is that the following statements made by the prosecutor regarding an offer of immunity made to a co-defendant for testimony against Nelson were improper:

> Okay. Mr. Green has a pending case. That's true. Mr. Newell and Mr. Davis were granted immunity [sic]. That's true. all [sic] of that, I think the evidence in this case shows, comes after they have made the statements to the police. After they make statements to the police. After they've essentially told what they know about Mr. Nelson And [sic] they come in with their lawyer and say you know, Mr. Davis made this other statement here where he said he didn't know anything, and that was a lie, and he could theoretically be prosecuted for lying to the police. And his lawyer says, either give him immunity or he's not going to talk about how he moved guns around or though he was moving guns and how he lied to the police unless you give him immunity. But all that comes up afterwards. They are not saying these things to the police about Mr. Nelson because they have grant of immunity. That comes first. The statements to the police come and later they get this grant of immunity.

(*Id.*)

A fifth instance of improper argument, according to Nelson, was when the prosecutor argued that Nelson's witnesses were not credible because they did not contact the district attorney or the press to tell their stories, which exculpated Nelson.

15

Nelson's sixth allegation of error is that the prosecutor also made argument touching upon Nelson's presumption of innocence: "The presumption of innocence essentially for Mr. Nelson, in my opinion, has been erased. It is a legal presumption where someone is presumed innocent until the evidence comes from here sort of into the jury's hands. And I submit to you that that presumption has been erased." (Pet. at 9-A, 9-B.)

Finally, Nelson claims the prosecutor's argument was peppered with phrases such as "I think," "I believe," and "I submit." Nelson claims these statements were improper expressions of the prosecutor's personal opinion and that they mislead the jury.

In examining the challenged argument under *Darden*, the issue is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. 477 U.S. at 181. If the answer to this question is "no," Nelson was not prejudiced and therefore he would have no valid claim to ineffective assistance of counsel. I have reviewed each of instance of the allegedly objectionable argument Nelson presents, and I do not find anything even approaching the level of argument that so infected the trial with unfairness so as to render Nelson's conviction a denial of due process. *See, e.g.*, *United States v. Morgan*, 113 F.3d 85, 90 (7th Cir. 1997) (inviting conviction for reasons other than guilt); *United States v. Hartmann*, 958 F.2d 774, 785-86 (7th Cir. 1992) (expressing personal opinion regarding truthfulness of a witness); *United States v. Stillwell*, 900 F.2d 1104, 1112 (7th Cir. 1990) (implying possession of information not in evidence that would support credibility of a witness).

It was not improper argument for the prosecutor to say, "But Mr. Nelson is in this all the way. I don't think there is any question there." (Pet. at 9.) This comment was in the context of the prosecutor's discussion of the instruction on party to a crime liability. (Answer, Ex. M at 8-9.) The

16

fact that the prosecutor said "I don't think" does not cause the statement to be improper under *Darden*. Just because a prosecutor has the habit of using phrases such as "I think" or "I believe", it does not mean that the argument, read as a whole, cannot be proper commentary on the evidence. *See United States v. Lindsay*, 157 F.3d 532, 536 (7th Cir. 1998). While it may be a poor advocacy technique for counsel to ever use the word "I" in argument, this in and of itself does not amount to improper argument. Nelson's first challenge does not amount to improper argument as it was a fair commentary on the evidence that he was a party to a crime.

The second challenge Nelson advances regarding the prosecutor's argument about Nelson "having his story ready". Immediately prior to the challenged statement the prosecutor said:

> That it was unbelievable that people would check their clocks, and their watches, and their dash clocks and everything so regularly that he realized that even the part of the story which he was ready to tell you, which I know it was 9:15 when I got back to my room because I checked the box on my cable, even he on the stand then changed that and said well, I didn't really look at it.
>
> You as jurors saw Antoine Nelson take the stand. You saw a little bit of his demeanor, a little bit of his personality. If you think for one second that Mr. Nelson was really at that party he would not have told Detective Klabunde that when he was arrested in Chicago, then don't find him guilty.

(Answer Ex. M at 9.) Placed in context, the challenged statements are nothing more than fair comment on the plausibility of Nelson's version of events and his credibility.

The third statement Nelson challenges is "I think it's clear from the law that even if–even if mentally you are thinking I'm going to scare them I'm going to light this place up, I'm going to show them not to shoot at my guys." This statement was made by the prosecutor in rebuttal in response to argument by Nelson's counsel. Placed in context, the prosecutor said:

17

> That's 75 shots, and they weren't trying to kill? That's what Mr. Shikora [defense counsel] wants you to believe. According to Mr. Shikora, if you take three SKS rifles, point them at a bunch of people at a party and fire your every bullet like you essentially have, you're not trying to kill anyone. Well, I disagree with that.
>
> I think it's clear from the law that even if–even if mentally you are thinking I'm going to scare them, I'm going to light this place up; I'm going to show them not to shoot at my guys, I'm really hoping no one dies here, even if that is what you are thinking as you pull the trigger, you have to be aware that your conduct is practically certain to cause the death of another human being when you–what else are you creeping through the yards for with these rifles?

(Answer Ex. M. at 10.) This is not improper argument but fair comment on the evidence and a permissible invited rely to a defense argument regarding Nelson's intent.

Nelson's fourth challenge, the prosecutor's comments regarding offers of immunity to government witnesses, was also not improper under *Darden*. Nelson claims the statement mislead the jury on the issue of immunity and that the prosecutor improperly vouched for the witnesses. The explanation of the immunity offered to the witnesses was a fair comment on their credibility and an invited response to a defense challenge to their credibility as potential co-defendants. Even if the prosecutor referred to facts not in evidence, the trial court provided an instruction to the jury to disregard remarks of counsel that suggested facts that were not in evidence. (Answer Ex. M at 12.)

Nelson's fifth challenge is to the prosecutor's comments in rebuttal argument on the testimony of his alibi witnesses. The prosecutor noted that these witnesses did not come forward to offer information. Nelson claims this argument improperly shifted the burden on him of proving his innocence. In reality, however, these statements were fair comment on the credibility and plausibility of the alibi witnesses' accounts, especially given their claim they had first told their alibi story to defense counsel a few weeks prior to trial. (Answer Ex. M at 12.) This was an issue the

18

defense put in issue; the prosecutor's statements did not shift the burden to Nelson to prove his innocence.

Nelson's allegation that the prosecutor's discussion of the presumption of innocence was improper is also unconvincing. The full context of this comment was as follows:

> The presumption of innocence essentially for Mr. Nelson, in my opinion, has been erased. It is a legal presumption where someone is presumed innocent until the evidence comes from here sort of into the jury's hands. And I submit to you that the presumption has been erased. That the State has give [sic] you evidence beyond a reasonable doubt when you think about what's real. When you go in the back there right now you have to ask yourself was this guy out there, the answer is yes. It's what makes sense in ths case. It makes sense because it's true.

(Answer Ex. M at 13.) This statement cannot be fairly interpreted as a claim that Nelson was not presumed innocent, but that the evidence presented overcame the presumption beyond a reasonable doubt. This, like all of the other statements of the prosecutor with which Nelson takes issue, is not improper argument.

## III. CONCLUSION

I conclude that the prosecutor's comments did not so "infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181. This being the case, the failure of Nelson's defense counsel to object to the argument "cannot be considered prejudicial for purposes of the *Strickland* analysis." *Hough*, 272 F.3d at 904. As he was not prejudiced, I dispose of the ineffectiveness claim against trial counsel on that basis. *Strickland*, 466 U.S. at 697. And since Nelson's claim of ineffective assistance of postconviction and appellate counsel is likewise derivative of his claim regarding trial counsel, it necessarily follows that this claim fails as well.

19

**THEREFORE IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus is denied.

**IT IS ALSO ORDERED** that this action is dismissed.

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

Dated this   5th   day of January, 2009.

                                                s/ William C. Griesbach
                                                WILLIAM C. GRIESBACH
                                                United States District Judge

20

Case 1:07-cv-01022-WCG   Filed 01/06/09   Page 20 of 20   Document 23